**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

TOMMIE G. SAVAGE,

          Appellant,

       v.

DEPARTMENT OF THE ARMY,

          Agency.

DOCKET NUMBERS
AT-0752-11-0634-B-1
AT-1221-12-0591-B-1

DATE: October 31, 2022

# THIS ORDER IS NONPRECEDENTIAL[1]

Michael D. Kohn, Esquire, Ashley Binetti, Brandon S. Walker and Felipe
    Bohnet-Gomez, Washington, D.C., for the appellant.

Elizabeth Vavrica, Jacksonville, Florida, for the agency.

Ryan Andrew Black, Huntsville, Alabama, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**REMAND ORDER**

¶1      The appellant has filed a petition for review of the remand initial decision,
in which the administrative judge sustained the appellant's removal, dismissed

---

[1] A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law. Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions. In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

her constructive suspension claim, and denied her request for corrective action under 5 U.S.C. § 1221. For the reasons discussed below, we GRANT the appellant's petition. We REVERSE the portion of the initial decision that dismissed the appellant's constructive suspension claim, find that the appellant suffered a constructive suspension within the Board's jurisdiction, and REVERSE the suspension action. We also REVERSE the portion of the initial decision that sustained the charge of absence without leave (AWOL), and VACATE the portion of the decision that sustained the removal action. We REMAND the case for further adjudication on the appellant's whistleblowing reprisal claims concerning her removal; her constructive suspension; her November 2007 reassignment; and the March 2009 actions denying her requests for leave without pay (LWOP), advanced sick leave, and an extension of her return-to-work date.

## BACKGROUND

¶2 The appellant was employed as a Contract Specialist with the U.S. Army Engineer and Support Center in Huntsville, Alabama. *Savage v. Department of the Army*, MSPB Docket No. AT-0752-11-0634-I-2, Appeal File (I-2 AF), Tab 64, Exhibits (Exs.) A-P, AD. Beginning in late 2006, and continuing into 2007, the appellant reported what she claimed were illegal and improper contracting activities in the Ranges Program, which generally concerns the design and implementation of agency training facilities. I-2 AF, Tab 64, Exs. AE, AG. The appellant's disclosures were a factor in the initiation of several command-directed inquiries, including an internal audit, which largely validated the appellant's legal concerns, as well as an Army Regulation (AR) 15‑6 investigation, which resulted in a report that identified the appellant by name as a source of the allegations of wrongdoing. *Id.*, Exs. AK, EQ.

¶3 In June 2007, the appellant filed a formal equal employment opportunity (EEO) complaint, in which she alleged, inter alia, that she had been subjected to

harassment and a hostile work environment because of her race and sex, in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII). I-2 AF, Tab 64, Ex. BE. On October 17, 2007, the appellant and the agency entered into a negotiated settlement agreement that resolved the June 2007 EEO complaint, including "any and all claims, grievances, complaints or appeals, whether perfected or not, in this or any other forum . . . relating to any matters that occurred prior to the execution of this settlement agreement." *Id.*, Ex. BE. The agreement provided, inter alia, that the appellant would be reassigned "to a position comparable with her current grade and salary" with the agency's Small Business Office (SBO) in Huntsville. *Id.* at 1. Effective November 11, 2007, the appellant was reassigned, with no reduction in pay, from her YC-1102-02 Supervisory Contract Specialist position, to a YA-1102-02 Contract Specialist position with the SBO. I-2 AF, Tab 64, Exs. BE, BG.

¶4        On August 4, 2008, the appellant initiated contact with the agency's EEO office, alleging that she had been subjected to a hostile work environment as a result of race and sex discrimination and reprisal for her prior EEO activity. *Savage v. Department of the Army*, MSPB Docket Nos. AT-0752-11-0634-B-1 and AT-1221-12-0591-B-1, Remand Appeal File (RAF), Tab 49 at 98. At the request of the EEO office, she provided an addendum letter, dated August 15, 2008, describing numerous instances of alleged harassment that took place following her reassignment to the SBO. *Id.* at 99-112. She requested, among other remedies, that "[h]arassment . . . immediately cease and that I be allowed to do my job." *Id.* at 112. Her initial contact was later followed by a November 4, 2008 formal EEO complaint in which she identified 25 specific incidents of alleged harassment. RAF, Tab 44.[2]

---

[2] The agency ultimately issued a final agency decision, dated December 28, 2010, finding that the appellant had not established her discrimination and reprisal claims. RAF, Tab 47 at 14-49.

¶5    In addition to her EEO activity, the appellant made disclosures, beginning in June 2008, concerning what she believed to be a violation of the Federal Acquisition Regulations in the failure to utilize Defense Department (DD) Form 2579, Small Business Coordination Record, in circumstances involving contract modifications. I-2 AF, Tab 58 at 5-16. On August 17, 2008, the appellant and her new first-level supervisor, Deputy Commander D.B., had a heated discussion concerning the DD Form 2579 issue. The appellant asserts that this confrontation was "the final straw" that resulted in her again seeking psychological counseling. RAF, Tab 48 at 28.

¶6    The following day, August 18, 2008, the appellant visited her treating psychologist, Dr. B.M., who recommended an 8-week leave of absence due to "intensifying depression, anxiety and work[ ] caused stress." *Savage v. Department of the Army*, MSPB Docket No. AT-0752-11-0634-I-1, Initial Appeal File (IAF), Tab 9, Subtab 4hh. D.B. granted the appellant's request for leave through October 20, 2008. *Id.*, Subtabs 4ff–4gg. Subsequently, on October 18, 2008, Dr. B.M. recommended that the appellant's leave of absence be extended until December 22, 2008. *Id.*, Subtab 4cc. D.B. initially denied the request, but after requesting and receiving additional documentation from Dr. B.M., he granted the appellant sick leave until December 5, 2008. *Id.*, Subtabs 4z-4cc. The appellant later submitted a leave request under the Family and Medical Leave Act (FMLA), with a certification from Dr. B.M., and D.B. granted the appellant's request for FMLA leave through March 5, 2009. *Id.*, Subtabs 4w-4x.

¶7    By letter dated March 4, 2009, Dr. B.M. recommended that the appellant's return-to-work date tentatively be changed from March 5, 2009, to May 4, 2009, and the appellant requested an additional leave of absence in accordance with that recommendation. IAF, Tab 9, Subtabs 4u-4v. D.B. denied the request in large part, but approved the appellant's use of accrued sick leave through noon on March 12, 2009. *Id.*, Subtab 4t. On March 11, 2009, the appellant requested advanced sick leave through May 4, 2009. *Id.*, Subtab 4s. That same day, D.B.

denied the request, citing the appellant's "previous inability to return to work according to [her] psychologist's estimates." *Id.*, Subtab 4r.

¶8    The appellant requested reconsideration and submitted an additional letter from Dr. B.M., dated March 13, 2009. *Id.*, Subtabs 4p-4q. In that letter, Dr. B.M. stated, in part:

> [The appellant] is experiencing severe depression and intensified anxiety related to her work environment. [She] has perceived her work environment [as] hostile and is overwhelmed with fear and anxiety over returning to that environment. Her supervisors have not been supportive and she believes that they are personally against her.

*Id.*, Subtab 4q. Dr. B.M. further opined:

> She has been diagnosed with Acute Stress Disorder (308.3) and Major Depression Disorder (296.33). Acute Stress Disorder is the effect of being exposed to traumatic event(s) that involves threat to self and the person's response involves intense [helplessness]. [Her] work environment has produced these disturbances for her. The depression is severe, but without psychotic features. She is experiencing severe anxiety attacks, having headaches, suffering at night with nightmares, and her skin has started to break out again. She is emotionally unable to function effective[ly] within her current work environment.

*Id.* Dr. B.M. again recommended that the appellant's return-to-work date be extended to May 4, 2009, but indicated that this date was "tentative." *Id.* D.B. again denied the appellant's request for advanced sick leave, and also denied her subsequent request for LWOP. *Id.*, Subtabs 4m-4o. On April 3, 2009, D.B. informed the appellant that her leave was exhausted and that she therefore would be placed in an absence without leave (AWOL) status. *Id.*, Subtab 4*l*. The appellant entered AWOL status on April 2, 2009. *Id.*, Subtab 4f.[3]

---

[3] On April 3, 2009, the appellant filed another formal EEO complaint, in which she alleged that she had been subjected to a hostile work environment, based on reprisal for her 2007 and 2008 EEO complaints. IAF, Tab 4. She named D.B. as the discriminating official and cited the denial of her request for LWOP, among other alleged retaliatory actions. *Id.* The agency ultimately issued a final agency decision finding no discrimination as to the allegations set forth in her April 3, 2009 complaint. *Id.*

¶9     On May 4, 2009, the appellant reported to work briefly but became physically ill and left after approximately 1 hour. IAF, Tab 9, Subtab 4k. In a May 6, 2009 letter, Dr. B.M. recounted the incident and recommended September 1, 2009, as a new tentative return-to-work date. *Id.* She reiterated her diagnosis of Acute Stress Disorder and Major Depression Disorder, and further stated: "[The appellant's] work environment has been traumatic. Returning to her work place caused a spontaneous recovery of her previous symptoms. She is emotionally unable to function effective[ly] in her current work environment." *Id.* The appellant submitted a copy of the May 6, 2009 letter to D.B. and requested that her AWOL status be converted to LWOP or advanced sick leave. *Id.*, Subtab 4j.

¶10     In response to that request, D.B. issued a letter to Dr. B.M., requesting additional information. *Id.*, Subtab 4h. D.B. also requested that the appellant meet with a psychologist of his choosing for a second opinion. *Id.*, Subtab 4i. Dr. B.M. did not respond to the request for additional information. The agency's consulting psychologist, Dr. J.H., met with the appellant on July 8, 2009, and on July 19, 2009, he provided a written assessment based on the interview and his review of the records provided by the appellant's psychologist. *Id.*, Subtab 4g. He concluded, in relevant part:

> The present evaluation indicates that [the appellant] suffers a serious mental illness. The diagnostic impression was major depression, single episode, moderate to severe, with possible psychotic features, and anxiety disorder [not otherwise specified] with generalized anxiety and panic attack features. . . .

> The seriousness of these conditions suggests that [the appellant] has been medically and psychologically unable to work since August 2008 because of a mental condition. Poor stress tolerance, fatigue, poor emotional control, extreme anxiety, panic attacks, agoraphobia, feelings of hopelessness and loss of will or determination are the factors that have made her unable to function in her role as a Corps of Engineer[s] officer and manager.

> It is unlikely that [the appellant] will be able to return to the previous work in the next six to twelve months. There is

> considerable doubt in the mind of the undersigned that she will ever return to the currently assigned workplace, but continued treatment might be helpful in bringing that about or assisting [her] to the point that she could work for the Corps in some other capacity.

*Id.*, Subtab 4g.

¶11    By notice dated September 14, 2009, D.B. proposed to remove the appellant based on three charges: (1) AWOL; (2) Excessive Absences; and (3) Unavailability to Report for Duty with No Foreseeable End. IAF, Tab 9, Subtab 4d. The appellant did not provide a response to the deciding official.[4] By letter dated November 3, 2009, the deciding official notified the appellant of his decision to remove her, effective November 6, 2009. *Id.*, Subtab 4b.

¶12    The appellant filed a timely Board appeal of her removal, raising affirmative defenses of race and sex discrimination and retaliation for EEO activity. IAF, Tab 1. In particular, she alleged that the removal was the ultimate result of the agency creating a hostile work environment where she could not perform her duties and responsibilities, which in turn led to her extended absences. *Id.* She specifically alleged that the hostile work environment was created following the settlement of her June 2007 EEO complaint. *Id.* The administrative judge dismissed the appeal without prejudice to permit the appellant additional time to file a whistleblowing retaliation complaint with the Office of Special Counsel (OSC). IAF, Tab 22, Initial Decision. On October 11, 2011, the appellant filed a complaint with OSC, alleging that agency officials had taken various personnel actions, including her removal, in retaliation for her disclosures concerning the Ranges Program. I-2 AF, Tab 1; *Savage v. Department of the Army*, MSPB Docket No. AT-1221-12-0591-W‑1, Appeal File (W-1 File), Tab 1.

---

[4] The appellant's attorney at the time did address the proposed removal action in an October 3, 2009 email to agency counsel. I-2 AF, Tab 64, Ex. DA. However, neither the appellant nor her attorney responded to the deciding official, as instructed in the proposal notice, and there is no indication in the record that the deciding official received a copy of the October 3, 2009 email.

¶13    After exhausting her administrative remedy with OSC, the appellant filed a timely individual right of action (IRA) appeal and also refiled her removal appeal. I-2 AF, Tab 1; W-1 File, Tab 1. The administrative judge joined the two appeals for hearing. I-2 AF, Tab 3; W-1 File, Tab 3. In the removal appeal, the appellant raised additional affirmative defenses of disability discrimination and retaliation for protected whistleblowing activity. I-2 AF, Tab 55. In the IRA appeal, the administrative judge determined that the appellant had established jurisdiction concerning the following personnel actions: (1) the November 2007 reassignment; (2) the December 2007 performance appraisal; (3) the failure to confer a monetary award to the appellant following a SBO conference in 2008; (4) the December 2008 performance appraisal; (5) the refusal to extend her return-to-work date in March 2009; (6) the denial of her advanced sick leave request in March 2009; (7) the denial of her LWOP request in March 2009; and (8) an alleged constructive suspension based on the creation of a hostile work environment that compelled her to be absent from work from mid-August 2008, until her removal in November 2009. *Id.*

¶14    Following a hearing, the administrative judge issued separate initial decisions in the IRA and removal appeals. In the IRA appeal, the administrative judge determined that the appellant had made protected disclosures concerning the Ranges Program, and also had shown that they were a contributing factor in all the personnel actions at issue, except for the alleged constructive suspension. W-1 File, Tab 6, Initial Decision (W-1 ID) at 6-13. The administrative judge noted that the appellant also had alleged a protected disclosure concerning DD Form 2579, but found that she had not exhausted her OSC remedy regarding that disclosure. W-1 ID at 8. The administrative judge then found that the agency had shown by clear and convincing evidence that it would have taken some of the alleged retaliatory actions absent the appellant's whistleblowing activity, but had failed to meet that burden as to the December 2007 and December 2008 performance evaluations, and the failure to provide a monetary

award for the appellant's participation in a SBO conference. W-1 ID at 13-21. Finally, the administrative judge concluded that the appellant had failed to establish that she was constructively suspended. W-1 ID at 21-24.

¶15    In the removal appeal, the administrative judge sustained all three charges and found that the agency had met its burden of proof regarding nexus and penalty. I-2 AF, Tab 71, Initial Decision (I-2 ID) at 4-12. The administrative judge further found that the appellant had failed to establish her affirmative defenses. I-2 ID at 12-18. Accordingly, the administrative judge sustained the removal action. I-2 ID at 18. The appellant petitioned for review of both initial decisions.

¶16    On review, the Board joined the appellant's IRA and removal appeals and issued one precedential decision, *Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015), *overruled in part by Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶¶ 23-25, in which the Board: (1) remanded the appellant's constructive suspension claim for review under chapter 75 procedures; (2) directed the administrative judge to determine whether the appellant's alleged hostile work environment constituted a personnel action for purposes of her IRA appeal; (3) directed the administrative judge to determine whether the agency established by clear and convincing evidence that its decisions concerning the appellant's leave requests and/or her requested return-to-work date in March 2009 would have been the same absent her whistleblowing activity; (4) directed the administrative judge to determine whether the appellant was constructively suspended during the period for which she was charged with AWOL and, if so, reverse the charge; (5) did not sustain the charge of excessive absences; (6) sustained the charge of unavailability for duty with no foreseeable end; (7) directed that the administrative judge reexamine the appellant's Title VII claims under a newly articulated standard; and (8) directed the administrative judge to consider whether, in light of all pertinent record evidence, including the appellant's disclosure concerning

DD Form 2579, the agency showed by clear and convincing evidence that it would have removed the appellant absent her protected disclosures. *See generally id.* The Board left undisturbed the administrative judge's finding that the appellant was entitled to corrective action for the December 2007 and December 2008 performance evaluations and the agency's failure to provide a monetary award for her participation in a SBO conference. The Board also left undisturbed the administrative judge's finding that the appellant did not establish her claim of disability discrimination. *See generally id*.

¶17 On remand, the administrative judge conducted a supplemental hearing and issued a new initial decision addressing the issues identified in the Board's order. RAF, Tab 63, Remand Initial Decision (RID). In the chapter 75 appeal, the administrative judge determined that: (1) the appellant was not constructively suspended; (2) the charge of AWOL was established; (3) removal was a reasonable penalty based on the sustained charges of AWOL and unavailability for duty with no foreseeable end; (4) the appellant failed to establish her Title VII claims; (5) the appellant's removal was "not motivated" by the DD Form 2579 disclosure; and (6) the agency proved by clear and convincing evidence that it would have removed the appellant absent her protected disclosures. RID at 9-27. In the IRA appeal, the administrative judge determined that: (1) the appellant was not subjected to a hostile work environment that would constitute a personnel action for purposes of the Whistleblower Protection Act of 1989, as amended (WPA); (2) the agency proved by clear and convincing evidence that it would have reassigned the appellant to the YA-1102-02 Contract Specialist position even absent her protected disclosures concerning the Ranges program; and (3) the agency proved by clear and convincing evidence that it would have taken the same March 2009 actions concerning extending the appellant's return-to-work date and her requests for advanced sick leave or LWOP, even absent her protected disclosures concerning the Ranges program. RID at 27-32. Unlike the previous initial

decision in the IRA appeal, the initial decision on remand did not include language ordering corrective action concerning the appellant's 2007 and 2008 performance evaluations and the agency's failure to provide a monetary award for her participation in the SBO conference. *Compare* W-1 ID at 25-27, *with* RID at 32.

¶18   On review, the appellant argues that: (1) the agency failed to submit clear and convincing evidence concerning her 2007 reassignment; (2) the agency violated her right to due process when the deciding official relied on ex parte communications to evaluate the *Douglas* factors; (3) the administrative judge did not apply the correct legal standard in analyzing her constructive suspension claim; (4) the administrative judge mischaracterized Dr. B.M.'s testimony; (5) the agency relied on an unlawful fitness-for-duty examination in taking the removal action; and (6) the appellant provided the agency appropriate notice of intolerable working conditions. Petition for Review (PFR) File, Tab 3 at 30-41. The agency has filed a response. PFR File, Tab 6.

## ANALYSIS

MSPB Docket No. AT-0752-11-0634-B-1

*The appellant established that she was constructively suspended.*

¶19   Like involuntary resignations, removals, and reductions in pay or grade, involuntary leaves of absence may be appealable under chapter 75. *Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶ 8 (2013). Although various fact patterns may give rise to an appealable constructive suspension, all constructive suspension claims have two things in common: (1) the employee lacked a meaningful choice in the matter; and (2) it was the agency's wrongful actions that deprived the employee of that choice. *Id.*, ¶ 11. Thus, to establish Board jurisdiction over an alleged constructive suspension based on intolerable working conditions, the appellant must show both that a reasonable person would have felt compelled to absent herself under the conditions and that the agency was

culpable for those conditions. *Id.*; *Peoples v. Department of the Navy*, 83 M.S.P.R. 216, ¶¶ 6-9 (1999). The issue of voluntariness is distinct from the issue of the agency's culpability. *See Bean*, 120 M.S.P.R. 397, ¶ 12.

¶20    In addressing the issue of voluntariness, the administrative judge considered the appellant's allegations that during calendar year 2008, i.e., after her reassignment to the SBO, the following occurred:

- The SBO was not fully staffed;
- She was excluded from meetings pertinent to the SBO;
- Her initial supervisor asked her if her grandmother had any "good slave masters";
- Her initial supervisor commented that she had "nappy and greasy hair";
- She had hostile encounters with contracting office personnel;
- She experienced hostility from her supervisors related to pressure from contracting office personnel;
- She was subject to unprecedented job requirements (*e.g.*, same day or expedited reviews regardless of workload);
- D.B. pressured her to develop contract review timelines at the contracting office's request;
- She was excluded from emails and meetings leading to a decision that DD Form 2579s would no longer be prepared for contract modifications;
- Her comments were omitted from the minutes of meetings on the DD Form 2579 issue;
- On August 17, 2008 she "confronted" D.B. about "his unlawful directive to halt the [DD Form] 2579 review on contract modifications" and he responded by "screaming" at her.

RID at 10-11; RAF, Tab 48 at 23-28; Hearing Transcript (HT), May 10, 2016, (testimony of the appellant).[5]    The administrative judge concluded that the incidents in question, taken singly or together, were not of sufficient severity that

---

[5] The hearing on remand was conducted on April 27-28 and May 10, 2016. Written transcripts are attached to the appellant's petition for review. PFR File, Tab 3.

a reasonable person would have been compelled to stop reporting for duty. RID at 11-12.[6]

¶21    However, the parties and their respective medical witnesses are in agreement that, beginning on August 18, 2008, and continuing through her removal, the appellant was medically incapacitated from returning to her workplace. IAF, Tab 9, Subtabs 4g, 4q, 4aa. Under these circumstances, we must conclude that the appellant's absences were involuntary. *See Bean*, 120 M.S.P.R. 397, ¶ 13 (rejecting the notion that "working outside medical restrictions is somehow a viable option for federal employees"); *see also Moore v. U.S. Postal Service*, 117 M.S.P.R. 84, ¶ 12 (2011) (finding a nonfrivolous allegation of an involuntary absence when the appellant's psychologist stated that anxiety caused by her working conditions rendered her unable to work, and subsequently diagnosed her with post-traumatic stress disorder and recommended a transfer); *Peoples*, 83 M.S.P.R. 216, ¶ 11 (finding nonfrivolous allegations of involuntary absences when each appellant asserted that the employer-retained counseling service diagnosed that she would suffer emotional injury or harm if she returned to work alongside a coworker who engaged in continuing bizarre behavior, and all but one appellant subsequently was advised by her individual psychiatrist that her symptoms would worsen and she would suffer injury or harm emotionally if she returned to work). Hence, whether the appellant suffered a constructive suspension turns on the element of culpability, i.e.,

---

[6] On review, the appellant contends that the administrative judge should have considered all 25 incidents listed in her 2008 EEO complaint, as well as an additional 12 incidents listed in her 2007 EEO complaint, in determining whether her absences were involuntary. PFR File, Tab 3 at 35 n.42. It is unnecessary to decide whether the appellant is correct on this point because, as discussed below, we find the appellant's absences were involuntary due to her medical incapacitation.

whether her incapacitation and resulting absences are attributable to wrongful actions by the agency.  *See Bean*, [120 M.S.P.R. 397](), ¶ 11.[7]

¶22    On this issue, the record contains conflicting evidence.  Specifically, while Dr. B.M. and Dr. J.H. agreed that the appellant's incapacitation was caused at least in part by her stressful working conditions, they differed as to whether her condition was caused by an objectively hostile work environment, for which the agency might be held culpable, or was the result of other environmental factors and the appellant's own predisposition to anxiety and depression.  Dr. B.M. testified that, in her view, the appellant's hostile work environment was the sole cause of her depression and resulting incapacitation.[8]   HT, May 10, 2016 (testimony of Dr. B.M.).   In contrast, Dr. J.H. disagreed with Dr. B.M.'s assessment that the appellant's working conditions were a sufficient explanation

---

[7] To establish the agency's culpability, the appellant must show, at minimum, that she put the agency on notice of the objectionable working conditions and requested assistance or remediation from the agency.  *Wegener v. Department of the Interior*, [89 M.S.P.R. 644](), ¶ 8 (2001), *overruled in part on other grounds by Abbott v. U.S. Postal Service*, [121 M.S.P.R. 294]() (2014); *Peoples*, [83 M.S.P.R. 216](), ¶ 8.  The required notice need not take the form of a request for accommodation under the Rehabilitation Act.  *Savage*, [122 M.S.P.R. 612](), ¶ 21.  Nonetheless, the agency must be put on notice of the specific nature of the conditions and the employee's inability to cope with them before it can be expected to investigate, attempt remediation of the conditions if necessary, or to consider finding other duties or positions for the employee pending resolution of the complaints.  *Peoples*, 83 M.S.P.R. 217, ¶ 9.  Hence, the agency's knowledge of the intolerable working conditions, whether actual or constructive, must be shown to establish a culpable connection between the objectionable conditions and the agency's duty—if any—to alleviate the conditions.  *Id.*  We agree with the appellant that she provided the required notice and request for remediation in her August 2008 contact with the agency's EEO office, in which she described in detail numerous incidents of alleged harassment and specifically requested that the agency put an end to what she viewed as a hostile work environment.  RAF, Tab 49 at 98-118.

[8] We agree with the appellant that Dr. B.M.'s testimony on this point was unambiguous, notwithstanding her reference to the appellant's "perception" of a hostile work environment.  PFR File, Tab 3 at 36-38.  Nothing in Dr. B.M.'s testimony or written reports suggests that she believed the appellant's perception was incorrect.  Notably, Dr. J.H. agreed that Dr. B.M. had "confidently" identified the appellant's hostile work environment as the cause of her psychological ailment.  HT, Apr. 27, 2016 (testimony of Dr. J.H.).

for her incapacitation, and instead concluded that the appellant already suffered from a mental illness that affected her ability to perceive her work environment objectively. HT, Apr. 27, 2016 (testimony of Dr. J.H.).

¶23    In assessing the probative weight of medical opinions, the Board considers, inter alia, the extent and duration of the expert's familiarity with the appellant's treatment. *Slater v. Department of Homeland Security*, 108 M.S.P.R. 419, ¶ 16 (2008). Here, Dr. B.M. observed the appellant in 75 sessions over 5½ years. HT, May 10, 2016 (testimony of Dr. B.M.). Dr. B.M. testified in the remand hearing that, based on those sessions, and the tests she administered, she found that the appellant was not otherwise disposed toward depression and that, as no other factors were apparent, that finding essentially validated the appellant's claim that she was subjected to a hostile work environment. *Id.* In contrast, Dr. J.H. performed only a one-time evaluation of the appellant. He acknowledged during his testimony that, in conducting that evaluation, he did not endeavor to find the cause of the appellant's condition, as he was not tasked to do so. HT, Apr. 27, 2016 (testimony of Dr. J.H.). On balance, we find Dr. B.M.'s opinion on this point more persuasive. Accordingly, we find that the appellant has shown by preponderant evidence that a hostile work environment was the primary cause of her medical inability to return to work during the period from August 18, 2008, until her removal.

¶24    Because the agency is culpable for subjecting the appellant to the hostile work environment that resulted in her incapacitation, we conclude that her absence from August 18, 2008, until her removal, constituted a constructive suspension within the Board's jurisdiction. We further find that the suspension action cannot be sustained, because it was effected without minimum due process, i.e., notice and an opportunity to respond. *See Mc Lain v. U.S. Postal Service*, 82 M.S.P.R. 526, ¶ 10 (1999). Because the suspension action must be reversed regardless of the outcome on remand, we order the agency to cancel the action and provide appropriate back pay and benefits, if any, for the period from

August 18, 2008, to her removal.  *See Martin v. U.S. Postal Service*, 123 M.S.P.R. 189, ¶ 14 (2016); *Mc Lain*, 82 M.S.P.R. 526, ¶ 11.

*We do not sustain the charge of AWOL in the removal action.*

¶25    As noted above, the agency based its removal action on three charges: excessive absences, unavailability for duty with no foreseeable end, and AWOL. In our previous remand order, we determined that the agency failed to prove the charge of excessive absences, but did establish the charge of unavailability for duty with no foreseeable end.  *Savage*, 122 M.S.P.R. 612, ¶¶ 30-34.  Concerning the charge of AWOL, we noted that finding that the appellant had been constructively suspended during the period she was charged AWOL would mean that her absences resulted from the agency's wrongful actions.  *Id.*, ¶ 29.  In such a case, it would have been unreasonable for the agency to deny the appellant's request for leave to cover those absences.  *Id.*  Accordingly, we directed that, if the administrative judge determined on remand that the appellant was constructively suspended during the period for which she was charged AWOL, the charge should not be sustained.  *Id.*  We have here found, contrary to the remand initial decision, that the appellant was constructively suspended. Accordingly, we do not sustain the AWOL charge.

*The appellant has not established that the agency violated Title VII, denied her due process, or relied on an unlawful psychological examination in removing her.*

¶26    Concerning the appellant's affirmative defenses, the administrative judge found below that the appellant did not prove her Title VII claims.  RID at 19-24. In particular, he found that these claims failed because the appellant did not meet her initial burden of proving that her race, sex, or protected EEO activity was a motivating factor in the agency's decision to remove her.[9]  *Id.*; *see Savage*,

---

[9] In finding that the appellant failed to show that her race, sex, or protected EEO activity was a motivating factor in her removal, the administrative judge addressed separately the several kinds of evidence identified in *Savage*, including direct evidence

122 M.S.P.R. 612, ¶ 41 (holding that a violation of 42 U.S.C. § 2000e-16 is established if a prohibited consideration was a motivating factor in the contested personnel action). We discern no error in that finding, and the appellant does not dispute it on review.[10]

¶27 For the first time on review, the appellant further contends that the agency denied her due process in removing her because the deciding official allegedly engaged in ex parte communications concerning the *Douglas* factors. PFR File, Tab 3 at 32-34; *see Ward v. U.S. Postal Service*, 634 F.3d 1274, 1280 (Fed. Cir. 2011) (holding that "ex parte communications introducing information material to the penalty run astray of the due process requirements of notice and an opportunity to be heard"). Generally, the Board will not consider an argument raised for the first time on petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980). In any event, the appellant has not identified any ex parte communication that was material to the deciding official's penalty selection. Rather, she alleges that

---

and three varieties of indirect evidence. RID at 20-23; *see Savage*, 122 M.S.P.R. 612, ¶ 42. Subsequent to the remand initial decision, the Board issued *Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647 (2016), *clarified by Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶¶ 23-24, in which we clarified that, in determining whether an appellant has met her initial burden to show that a prohibited consideration was a motivating factor, "all evidence belongs in a single pile and must be evaluated as a whole." *Id.*, ¶¶ 29-30 (quoting *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)). Although the administrative judge did not have the benefit of *Gardner*, which might have allowed for a more streamlined analysis, we agree with his conclusion that the appellant failed to meet her initial burden of showing that her race, sex or protected EEO activity was a motivating factor in her removal.

[10] Because we affirm the administrative judge's finding that the appellant failed to meet her initial burden to prove that race, sex, or retaliation for EEO activity were motivating factors in the agency's decision, we need not resolve the issue of whether the appellant proved that discrimination or retaliation was a "but-for" cause of the agency's decisions. *See Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶¶ 20-22, 29-33.

the individuals with whom the deciding official conferred failed to communicate information concerning her whistleblowing activity.  PFR File, Tab 3 at 32-34. If so, it is not apparent how the alleged concealment of this information would implicate *Ward* or otherwise represent a due process violation.  Accordingly, while we have found that the appellant was denied due process with respect to her constructive suspension, we find that she was not denied due process with respect to the removal action.

¶28     The appellant also argues on review that the removal action should be reversed because it was based on an allegedly unlawful psychiatric examination. PFR File, Tab 3 at 38-40.  It appears the appellant made a variation of this argument at the conclusion of the hearing on remand, HT, May 10, 2016, at 175, but the issue was not within the scope of the Board's remand order, and it is unclear why she could not have raised it at an earlier stage of the proceedings. In any event, we are not persuaded by the appellant's argument, because the record does not show that she was ever ordered to undergo a psychiatric examination.  Rather, D.B. indicated in his May 29, 2009 letter that he was "requesting" that the appellant meet with Dr. J.H., at no cost to her, in order to provide the agency with additional information needed to rule on her leave request.  IAF, Tab 9, Subtab 4i.  The Board has held that an agency may offer, rather than order, a medical examination, including a psychiatric evaluation, in any situation where the agency needs additional medical documentation to make an informed management decision.  *Doe v. Pension Benefit Guaranty Corporation*, 117 M.S.P.R. 579, ¶ 27 (2012); 5 C.F.R. § 339.302.  Accordingly, we find no merit to this affirmative defense.

> *Remand is necessary to fully adjudicate the appellant's affirmative defense of whistleblowing retaliation.*

¶29     Although the appellant failed to establish her other affirmative defenses, we find that her affirmative defense of whistleblowing retaliation requires further adjudication.  First, the administrative judge appears to have erred in finding that

the appellant's removal was "not motivated by" her disclosure concerning DD Form 2579.[11]  RID at 24-25.  If the administrative judge meant by this that the disclosure was not a contributing factor in the appellant's removal, his finding is not consistent with the record, as it is undisputed that the appellant made the disclosure directly to D.B., who proposed her removal approximately 13 to 15 months later.  These facts alone are sufficient to establish the contributing factor element under the knowledge/timing test of 5 U.S.C. § 1221(e)(1).  *See Schnell v. Department of the Army*, 114 M.S.P.R. 83, ¶ 22 (2010) (holding that a personnel action taken within 1 or 2 years of a protected disclosure is sufficiently close in time to satisfy the timing prong of the knowledge/timing test).  Thus, we find that the appellant has established her prima facie case concerning the DD Form 2579 disclosure.

¶30    Furthermore, we find that the administrative judge did not fully analyze the issue of whether the agency proved by clear and convincing evidence that it would have removed the appellant absent her protected disclosures.  In determining if an agency has shown by clear and convincing evidence that it would have taken the same personnel action absent whistleblowing, the Board will consider the following three factors:  the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are otherwise similarly situated.  *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).  The Board does not view the *Carr* factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these factors together to determine whether the

---

[11] We find that the appellant had a reasonable belief, correct or not, that the failure of the SBO to use DD Form 2579 to record contract modifications was in violation of an agency rule, in effect at the time of her disclosure, requiring the use of DD Form 2579 for all actions over a certain dollar amount.  RAF, Tab 59 at 7-15.  Accordingly, we conclude that her disclosure was protected under 5 U.S.C. § 2302(b)(8)(A)(i).

evidence is clear and convincing as a whole. *Lu v. Department of Homeland Security*, [122 M.S.P.R. 335](#), ¶ 7 (2015). Our reviewing court has further clarified that "[e]vidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *Whitmore v. Department of Labor*, [680 F.3d 1353](#), 1368 (Fed. Cir. 2012); *see Lu*, [122 M.S.P.R. 335](#), ¶ 10.

¶31　　In the initial decision in the refiled appeal, the administrative judge addressed only the first *Carr* factor, finding in effect that the agency had met its burden by virtue of having proven its charges. I-2 ID at 17-18. Accordingly, in our previous remand order, we instructed the administrative judge to revisit the question of whether the agency proved by clear and convincing evidence that it would have removed the appellant absent her protected disclosures. *Savage*, [122 M.S.P.R. 612](#), ¶ 52. In particular, we noted that the full Board had not sustained the charge of excessive absences, and that the merits of the AWOL charge remained to be decided on remand. *Id.* We further found that the administrative judge should consider the question of whether the appellant's incapacitation and resulting absences were themselves a product of whistleblowing reprisal. *Id.*; *see Whitmore*, 680 F.3d at 1376. It was not our intent however, to suggest that examining these issues would obviate the need to conduct a complete *Carr* factors analysis.

¶32　　On remand, the administrative judge determined that the AWOL charge, which he had sustained, together with the sustained charge of unavailability for duty without foreseeable end, "amply justify removal." RID at 25. Having so found, he concluded that, "given the appellant's misconduct . . . the agency met its high burden of proving it would have removed her absent the protected disclosures." RID at 25. Thus, as in the first initial decision, the administrative judge erroneously relied solely on the strength of the agency's reasons, i.e., the first *Carr* factor, in finding that the agency met its burden under the clear and

convincing test. Moreover, the first *Carr* factor must itself be reassessed, given our finding that the agency did not establish the AWOL charge.

¶33        In light of the above, we find that further adjudication, including explicit consideration of all three *Carr* factors, is needed to resolve the question of whether the agency proved by clear and convincing evidence that it would have removed the appellant absent her protected disclosures involving the Ranges Program and DD Form 2579. We find that the administrative judge is in the best position to complete the *Carr* factors analysis, having heard the live testimony. *See Shibuya v Department of Agriculture*, 119 M.S.P.R. 537, ¶ 37 (2013). If, on remand, the administrative judge determines that the agency failed to show by clear and convincing evidence that it would have removed the appellant absent her protected disclosures, he should reverse the action. If the administrative judge finds that the agency did make the required showing, he should make a new finding as to whether, based on the single sustained charge, the agency met its burden of proof on nexus and penalty.

As discussed above, the appellant has also alleged that the agency constructively suspended her in retaliation for her protected disclosures. The administrative judge did not address that claim below, having found the appellant was not constructively suspended. However, given our finding that the appellant was constructively suspended, it is necessary to determine whether the appellant's protected disclosures regarding the Ranges Program and DD Form 2579 disclosure) were a contributing factor in that action and, if so, whether the agency can show by clear and convincing evidence that the constructive suspension would have occurred in the absence of the appellant's protected disclosures. On remand, the administrative judge should address these questions, applying the same principles discussed above.

MSPB Docket No. AT-1221-12-0591-B-1

> *The appellant's allegations of a hostile work environment establish a significant change in working conditions under 5 U.S.C. § 2302(a)(2)(A)(xii).*

¶34    Under the WPA, a "personnel action" is defined to include, among other enumerated actions, "any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii). The legislative history of the 1994 amendment to the WPA indicates that "any other significant change in duties, responsibilities, or working conditions" should be interpreted broadly, to include "any harassment or discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system and should be determined on a case-by-case basis." 130 Cong. Rec. H11,419, H11,421 (daily ed. Oct. 7, 1994) (statement of Rep. McCloskey); *see Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 14; *Savage*, 122 M.S.P.R. 612, ¶ 23; *Roach v. Department of the Army*, 82 M.S.P.R. 464, ¶ 24 (1999); *Shivaee v. Department of the Navy*, 74 M.S.P.R. 383, 388 (1997). Accordingly, in our previous remand order, we found that the appellant's claim of a hostile work environment should be considered as an alleged personnel action for purposes of her IRA appeal. *Savage*, 122 M.S.P.R. 612, ¶ 23.

¶35    However, notwithstanding the broad interpretation accorded to the term "significant change in duties, responsibilities, or working conditions," not every agency action is a "personnel action" under the WPA. *Skarada*, 2022 MSPB 17, ¶ 15; *see King v. Department of Health & Human Services*, 133 F.3d 1450, 1453 (Fed. Cir. 1998). Rather, an agency action must have practical consequences for the employee to constitute a personnel action. *Skarada*, 2022 MSPB 17, ¶ 15. In determining whether an appellant has suffered a "significant change" in his duties, responsibilities, or working conditions, the Board must consider the alleged agency actions both collectively and individually. *Id.*, ¶ 16; *see Holderfield v. Merit Systems Protection Board*, 326 F.3d 1207, 1209 (Fed. Cir. 2003). A number of agency actions may amount to a covered "significant

change" personnel action collectively, even if they are not covered personnel actions individually. *Skarada*, 2022 MSPB 17, ¶ 16. To constitute a significant change in working conditions, however, a series of minor agency actions must be pervasive and occur over an extended period of time. *Id.* In sum, only agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities will be found to constitute a personnel action covered by 2302(a)(2)(A)(xii).

¶36      Here, the appellant described numerous acts of alleged harassment, occurring over an extended period of time, involving staffing issues, perceived exclusions from meetings or email discussions, disagreements with contracting office personnel and her own supervisors over work policies and procedures, and an extremely heavy workload. RAF, Tab 48 at 23-28; HT, May 10, 2016 (testimony of the appellant). As discussed above, we have found that the appellant suffered from a work environment that was the primary cause of her incapacitation and resulting absences. *Supra* ¶ 22. In light of that finding, we conclude that the alleged incidents of harassment, considered collectively, contributed to a "significant change in working conditions" as defined at 5 U.S.C. § 2302(a)(2)(A)(xii). Accordingly, on remand, the administrative judge should determine whether the appellant's protected disclosures concerning the Ranges Program were a contributing factor in that change in working conditions and, if so, whether the agency would have imposed that change in working conditions in the absence of those protected disclosures.

> *Further adjudication is needed to determine whether the agency proved by clear and convincing evidence that it would have reassigned the appellant to a nonsupervisory YA-02 Contract Specialist position, and taken the March 2009 actions absent her protected disclosures concerning the Ranges Program.*

¶37      In our previous remand order, we found that further adjudication was needed to determine whether the agency met its burden of proof under the clear

and convincing standard regarding the appellant's November 11, 2007 reassignment and the March 2009 actions denying her requests for LWOP, advanced sick leave, and an extension of her return-to-work date. As noted above, in determining whether the agency has proven by clear and convincing evidence that it would have taken a personnel action absent the appellant's whistleblowing activity, the Board will consider all relevant factors, including the following: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who do not engage in such protected activity, but who are otherwise similarly situated. *Carr*, 185 F.3d at 1323. Moreover, the Board must consider all the pertinent evidence in the record, and must not exclude or ignore countervailing evidence by only looking at the evidence that supports the agency's position. *See Whitmore*, 680 F.3d at 1367-70.

¶38 In finding that the agency met its burden as to these actions, the administrative judge implicitly considered the first *Carr* factor, finding that the agency acted reasonably in reassigning the appellant to her Contract Specialist position at the SBO, and in denying her requests for advanced sick leave, LWOP, and/or an extension of her return-to-work date. RID at 29-32. However, as with the whistleblowing defense in the removal action, the administrative judge did not conduct a full analysis of the *Carr* factors. RID at 29-31. As noted above, the administrative judge is in the best position to correct this oversight, having heard the live testimony. *See Shibuya*, 119 M.S.P.R. 537, ¶ 37. Accordingly, on remand, the administrative judge should conduct a new analysis of the clear and convincing test, consistent with *Carr* and *Whitmore*, over the November 11, 2007 reassignment and the March 2009 actions.

**ORDER**

¶39     We remand the case to the Atlanta Regional Office for further adjudication, consistent with this Order, regarding the appellant's claims that (1) her removal and constructive suspension were the result of retaliation for her disclosures concerning the Ranges Program and Form DD 2579; and (2) the appellant's November 11, 2007 reassignment, the agency's March 2009 actions, and the imposition of a hostile work environment were the result of retaliation for protected disclosures concerning the Ranges Program.    Regardless of the outcome, the administrative judge should again order corrective action concerning the appellant's 2008 and 2009 performance evaluations and the agency's denying a bonus for participation in the SBO conference.

¶40     Notwithstanding the remand proceedings, we ORDER the agency to cancel the appellant's constructive suspension for the period from August 18, 2008, to November 6, 2009.[12]  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).   The agency must complete this action no later than 20 days after the date of this decision.

¶41     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.   We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.   If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

---

[12] Given that the appellant was unable to work and was not formally suspended, cancellation of the action will presumably involve retroactively placing her in LWOP and/or sick leave status for the relevant period.

¶42     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶43     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶44     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

FOR THE BOARD:                          /s/ for
                                        _____
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.